**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**CHARLES HORTON**                                                               **PLAINTIFF**

**V.**                          **Case No. 4:25-CV-00483-DPM-PSH**

**COMMISSIONER,**
**Social Security Administration**                                               **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On November 17, 2021, Charles Horton ("Mr. Horton") filed an application for disability benefits. (Tr. at 16). He alleged that his disability began on February 1, 2019. *Id*. The claim was denied at the initial and reconsideration levels. *Id*. Following a hearing, an Administrative Law Judge ("ALJ") found that Mr. Horton was not disabled. (Tr. at 16-28). The Appeals Council denied Mr. Horton's request

for review of the ALJ's decision. (Tr. at 1-6).

The ALJ's decision now stands as the final decision of the Commissioner. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.   THE COMMISSIONER'S DECISION

Mr. Horton was 45 years old on the alleged onset date and he last met the insured status requirements of the Social Security Act on December 31, 2020. (Tr. at 18, 75). The ALJ found, at Step One of the required analysis, that Mr. Horton did not engage in substantial gainful activity during the period from the alleged onset date of February 1, 2019 through the date last insured of December 31, 2020.[1] *Id*. At Step Two, the ALJ determined that Mr. Horton had the following severe impairments through December 31, 2020: degenerative disc disease/degenerative joint disease of the lumbar spine, lupus, myositis, type 2 diabetes mellitus, bipolar disorder, and generalized anxiety disorder. (Tr. at 19).

At Step Three, the ALJ determined that Mr. Horton's impairments did not

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

meet or equal a Listing.[2] (Tr. at 19-20). Next, the ALJ concluded that Mr. Horton has the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) no more than occasional stooping, crouching, bending, kneeling, and crawling; (2) no more than frequent fingering and handling; (3) cannot use ropes, ladders, or scaffolding and can ambulate on level surfaces; (4) cannot work in an agriculture or construction zone; (5) can engage in simple, routine, and repetitive tasks with the ability to make simple, work-related decisions; and (6) can occasionally interact with coworkers, supervisors, and the public. (Tr. at 20).

The ALJ determined at Step Four that, through the date last insured, Mr. Horton was unable to perform any past relevant work. (Tr. at 26). Based upon Vocational Expert ("VE") testimony, the ALJ found, based on Mr. Horton's age, education, work experience, and RFC, that there are jobs in the national economy that Mr. Horton can perform. (Tr. at 26-28). Therefore, the ALJ concluded that Mr. Horton was not disabled. *Id*.

## III.   DISCUSSION

### A.   Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is

---

[2] The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); 20 C.F.R. Part 404, Subpart P, Appx 1.

supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950-51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

B.      Summary of Medical History

Mr. Horton alleges multiple impairments keep him from being able to work. The ALJ noted Mr. Horton's back pain, but discussed the objective findings, which suggested no more than moderate conditions. A 2015 lumbar MRI showed only mild degenerative changes, and a 2020 lumbar x-ray showed facet joint degenerative changes but no compression deformities or malalignment. (Tr. at 21-22, 413, 578). Bilateral hand x-rays from 2020 were normal. (Tr. at 21, 576). Musculoskeletal examinations showed some tenderness, but range of motion was generally normal, and Mr. Horton regularly had intact coordination and normal neurological findings.[3] (Tr. at 655, 661, 672, 684, 794, 805). The ALJ noted that Mr. Horton was referred to neurosurgery after the relevant time-period. The neurosurgeon recommended conservative treatment and did not recommend surgery. (Tr. at 22).

Mr. Horton showed elevated A1C at times and needed conservative treatment for diabetic neuropathy. He was prescribed orthotic footwear and an ankle brace. (Tr. at 23, 710, 1491). But Mr. Horton declined to follow doctors' advice on diet and blood sugar monitoring.[4]  (Tr. at 25, 750, 809, 813, 825). Mr. Horton said he would not likely follow the recommendations, and he was not regularly checking blood

---

[3] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

[4] A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

sugars at home. *Id*. Noncompliance was noted on other occasions. (Tr. at 23. 1506).

Mr. Horton treated mental impairments conservatively and found that medication and therapy helped with his symptoms. (Tr. at 470-512). He did not require any hospitalization for mental impairments. Notes from his therapy sessions showed he was independent in daily activities. Mental status examinations at therapy sessions were generally good with logical thought process, average intellectual functioning, good insight and judgment, and normal eye contact. (Tr. at 487-488, 493, 504-509, 520-531).

As for daily activities, Mr. Horton said that he could build and refurbish things at home for sale, collect antiques, visit with family and friends, shop in stores.[5] (Tr. at 23-25, 257-259, 280-282, 477, 481, 518). He could perform at least some work activity during the relevant time-period, although it did not rise to the level of substantial gainful activity. (Tr. at 18).

A state-agency medical expert reviewed the evidence at the initial level and found insufficient evidence to rate his medical impairments. (Tr. at 78). A state-agency medical expert at the reconsideration level found that Mr. Horton could perform light work with postural restrictions. (Tr. at 93). The ALJ found this second opinion persuasive based on the evidence in the record as a whole. (Tr. at 25).

---

[5] Such daily activities undermine his claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

The state-agency psychology experts also opined about what Mr. Horton could do. At the initial level of review, the expert found that Mr. Horton could perform semiskilled work.[6] (Tr. at 81). The reconsideration level expert found that Mr. Horton could perform unskilled work.[7] (Tr. at 90). The ALJ found the first opinion unpersuasive and the second persuasive. (Tr. at 25). He explained that due to mental impairments like difficulty in crowds, an RFC for simple, unskilled work with only occasional interaction with others was required.

### C.   Mr. Horton's arguments on appeal

In his brief, Mr. Horton contends that the evidence supporting the ALJ's decision is less than substantial. Specifically, he argues that the ALJ: (1) should have evaluated the opinion of Kayla Johnson, APRN, as a medical opinion, and ruled on its persuasiveness; (2) erred in not adopting Mr. Horton's request to amend his alleged onset date; and (3) assigned an RFC that did not fully incorporate Mr. Horton's limitations (more specifically, Mr. Horton contends that the ALJ should have include more mental limitations in the RFC).

#### 1.  APRN Johnson's statement

APRN Johnson submitted a letter dated March 13, 2020. (Tr. at 452). She

---

[6] Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. https://www.ssa.gov/OP_Home/cfr20/404/404-1568.htm

[7] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. *Id.*

detailed Mr. Horton's diagnoses and his treatment protocol, which was limited to conservative medication management. *Id*. She stated that "his disease can affect his daily activity significantly secondary to joint pain and swelling, especially during flare up which is unpredictable." *Id*. The ALJ referenced this letter in his opinion, but he did not make a finding on persuasiveness because it "offered no specific limitations." (Tr. at 26). Mr. Horton argues that the ALJ should have considered this letter a medical opinion and ruled on persuasiveness.[8]

The definition of "medical opinion" does not include "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." See 20 C.F.R. § 404.1513(a)(3). Those are "other medical evidence." 20 C.F.R. § 404.1513(a)(3).

A medical opinion that is subject to a review on persuasiveness will offer specific work restrictions in RFC terms. APRN Johnson's letter did not do that. *See Austin v. Kijakazi*, 52 F.4th 723, 728 n.3 (8th Cir. 2022) ("Mere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions'). The ALJ did discuss the letter and said he considered its content

---

[8] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

in his RFC analysis. (Tr. at 26). The Court finds that the ALJ did not err in his treatment of the letter.[9]

### 2. Alleged onset date

Mr. Horton sought to amend his alleged onset date to March 13, 2020. Doc. No. 10 at 10-12. He claims he did so to negate the effect of any work activity before that date. The ALJ did not amend the alleged onset date.

Had the ALJ allowed the amendment, the relevant time-period would have shortened by over half, making fewer medical records relevant to the ALJ's decision. This does not inure to Mr. Horton's benefit, undermining Mr. Horton's argument. An alleged onset date amendment would not have had an impact on the ALJ's findings, because the ALJ held that the work activity that Mr. Horton performed after February 1, 2019 did not rise to the level of substantial gainful activity. (Tr. at 18). Amending the alleged onset date would not have changed the ALJ's analysis or the outcome, even if it was construed as error. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (harmless error does not require reversal). And in any event, the ALJ considered evidence from both before and after the relevant time-period,

---

[9] Mr. Horton also asserts that since the ALJ found the letter to be vague, he should have recontacted APRN Johnson. This argument fails. While an ALJ has a duty to develop the record, this duty is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

showing he conducted a thorough review.

### 3. RFC

Mr. Horton argues that the RFC did not incorporate all of his limitations.[10] He specifically contends that the ALJ should have created an RFC that tracked precisely his Step Three findings on social interactions. First, the decision demonstrates that the ALJ considered symptoms and relief from conservative treatment, complaints and nature of pain, daily activities, state-agency opinions, and noncompliance. (Tr. at 20-24). He discussed the objective imaging and other medical testing results. *Id*. He found that Mr. Horton's subjective complaints were not entirely consistent with the balance of the medical record. (Tr. at 24). And he then created an RFC that reflected the credible limitations Mr. Horton had, based on the factors listed above. The ALJ was not bound to add limitations to the RFC that were not supported by the record.

As for social functioning, the ALJ did find at Step Three that Mr. Horton had moderate limitations in interacting with others and adapting and managing oneself. (Tr. at 19-20). The state-agency experts also found moderate social interaction

---

[10] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

limitations. (Tr. at 80, 94). The RFC stated that Mr. Horton could occasionally interact with coworkers, supervisors, and the public. Mr. Horton argues that this was not enough; he claims it did not reflect his anxiety in crowds. An ALJ is not bound to use any particular language in the RFC, and he does not need to mimic his Step Three findings or the findings of any doctor. *See Wyatt v. Kijakazi*, 2023 WL 6629761 at *1 (8th Cir. 2023). The various Steps of the required analysis each serve a function and the "degree of precision required at each Step differ;" deference is given to ALJ findings that can be "harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). The ALJ alone determines the RFC in these cases, and here, he considered the record as a whole, including conservative treatment that was effective; his RFC finding was well-supported. Reversal is unwarranted.

## IV.    CONCLUSION

There is substantial evidence to support the Commissioner's decision that Mr. Horton was not disabled. The ALJ properly considered the medical evidence, the RFC incorporated all of Mr. Horton's credible limitations, and the ALJ did not err in not adopting Mr. Horton's proffered amendment to the alleged onset date.

IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's decision be AFFIRMED, and

2.      Judgment be entered for the Defendant.

DATED this 26th day of May, 2026.

_____
UNITED STATES MAGISTRATE JUDGE